JUSTICE NELSON
specially concurs:'
¶44 I write separately as to the point of law discussed in ¶ 39 of our opinion because I believe that it is important to articulate what, I understand, is the underlying rationale and independent jurisprudential basis for our decision on this matter.
¶45 Conoco correctly states that reading the plain language of § 39-71-413, MCA, the “intentional tort” exception only applies to suits against the injured worker’s co-employee. Notwithstanding, as our opinion points out, we held in Sitzman v. Schumaker (1986), 221 Mont. 304, 718 P.2d 657, that suit could also be brought against the employer. Sitzman, 221 Mont. at 307, 718 P.2d at 659.
¶46 Our holding in Sitzman flowed as the natural consequence of our decision in Enberg v. Anaconda Co. (1971), 158 Mont. 135, 489 P.2d 1036. In Enberg we created a common law exception to the exclusive remedy rule for workers injured by the intentional acts of their employers. Enberg, 158 Mont. at 137, 489 P.2d at 1037. In 1973, the legislature enacted § 92-204.1, RCM (1947) (the predecessor to § 39-71-413, MCA). This statute created the statutory exception to the exclusive remedy rule for intentional acts and omissions by co-employees. Thus, after 1973, the exception applied to employers via the common law and Enberg, and to co-employees via the statute. Importantly, both standards were the same.
¶47 For this reason, Sitzman, decided in 1986, did not create a new common law exception to exclusivity; it merely applied “in a similar manner” the rationale of the exception that had already been created in Enberg. As this Court did in Enberg, the Sitzman Court focused on the purpose of the Act and concluded that to give the employer immunity for intentional torts would effectively destroy the quid pro quo; grant the employer the right to assault his employees and then hide behind exclusivity; force other employers to subsidize this wrongful conduct; allow the offending employer to benefit from his own wrongdoing; and, thus, defeat the purposes of the Act. Sitzman, 221 Mont. at 307-08, 718 P.2d at 659.
¶48 Furthermore, there are good reasons why the exception for intentional and malicious acts and omissions must apply in the same fashion to employers and co-employees alike. In Madison v. Pierce *415 (1970), 156 Mont. 209, 478 P.2d 860, we interpreted § 92-204, RCM (1947), which granted employers immunity from common law and statutory negligence actions brought by the injured employee, but allowed third party actions against persons or corporations other than the employer. Madison, 156 Mont. at 212, 478 P.2d at 862. In Madison, the injured worker was receiving compensation under the Act, but then attempted to sue various corporate officers of her employer, and her foreman. Madison, 156 Mont. at 210-11, 478 P.2d at 861-62. The question was whether the statute’s explicit grant of immunity to the employer also encompassed a grant of immunity to co-employees — here executive and management personnel. Madison, 156 Mont. at 213, 478 P.2d at 862-63. We held that it did. Madison, 156 Mont. at 219, 478 P.2d at 866.
¶49 Again, we looked to the purpose of the Act. We stated:
The broad purpose of the Montana Workmen’s Compensation Act is to substitute a system for the payment of medical costs and wage losses to injured employees without regard to fault, for the common law system of legal action by the injured employee against the one whose negligence proximately caused his injury.
Madison, 156 Mont. at 213, 478 P.2d at 863. We then went on to explain:
The principle behind this legislation was that the business enterprise or industry should directly bear the costs of injury to its employees in the same manner as the enterprise has always borne the costs of maintaining and repairing its plant, machinery and equipment. The business enterprise should pass along the costs of maintenance and repair of its human resources, its employees, in the same manner as is done in the case of other production costs, namely in the price at which its product is sold to the public. This underlying purpose finds summary expression in the familiar phrase “the cost of the product should bear the blood of the workman[.]”
Madison, 156 Mont. at 213-14, 478 P.2d at 863. Thus, the foundation for the Act is the principle of “enterprise liability’ — that is, recognition that the costs of compensating injured workers are, like other production expenses, simply a cost of doing business to be passed on to the public in the price of the product.
¶50 Recognizing this fundamental principle, we then acknowledged the corollary that:
*416 If section 92-204 were construed to withhold immunity to a co-employee from a negligence action, the cost of injury to an employee of the business would be shifted from the employer, where the Act places it, to a fellow employee, where the Act does not place it. It also would defeat the ultimate payment of injury cost by the public purchasing the product.
Madison, 156 Mont. at 215, 478 P.2d at 864.
Since the employee’s acts are the acts of his corporate employer for the purpose of establishing the employer’s liability, they are equally so for the purpose of establishing the employee’s liability. Liberal construction of the Act in favor of the injured workman does not compel us to ignore the equal rights of his fellow employees, specifically that the employer of a given business enterprise shoulder the costs of injury to his employees without recourse to contribution from coemployees.
Madison, 156 Mont. at 217, 478 P.2d at 865.
Montana’s Act is founded on the principle of enterprise liability and enterprise immunity. Therefore the contractual liability of the employer and the immunity of the coemployee in tort coexist; the coemployee is a member of the enterprise and not a stranger to the Act; that injury costs are not subject to being shifted around among the members of the enterprise, i.e. employer, employee, and coemployee, but remain solely the obligation of the employer;...
Madison, 156 Mont. at 219, 478 P.2d at 866.
¶51 Having thus determined that the Act was founded on the principles of enterprise liability, we then held that the immunity afforded by § 92-204, RCM (1947), extended to co-employees acting in furtherance of the employers’ business. Madison, 156 Mont. at 219, 478 P.2d at 866. And, as already noted above, § 92-204.1, RCM (1947), enacted by the legislature in 1973, effectively codified Madison.
¶52 Returning to the case at bar, this same principle of “enterprise liability” dictates why Conoco’s argument that the “intentional tort” exception only applies to suits against the injured worker’s co-employee must fail. “[I]njury costs are not subject to being shifted around among the members of the enterprise, i.e., employer, employee, and co-employee, but remain solely the obligation of the employer.” Madison, 156 Mont. at 219, 478 P.2d at 866. Were the intentional tort exception standards different as to employers and employees, then liability for an intentional and malicious act or omission committed by a co-employee at the direction of the employer and in *417 furtherance of the employer’s enterprise, would be shifted from the employer to the co-employee — contrary to the doctrine of enterprise liability, the foundation principle of the Act.
¶53 Accordingly, there isa well-established and independent jurisprudential basis for holding that the intentional tort exception to exclusivity applies to employers. That basis derives from the common law and the doctrine of enterprise liability.
¶54 I concur.
JUSTICE LEAPHART concurs in the foregoing special concurrence.